IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CENTURY BANK,

       **Plaintiff,**

v.                                 **No. 1:24-cv-01027-MLG-JHR**

ART FINANCE FUNDING (IX), LLC,
ANDREW C. ROSE, and
ANN S. COPELAND,

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [DOC. 13]

THIS MATTER comes before the undersigned on Century Bank's Motion for Default Judgment [Doc. 13]. On March 9, 2025, District Judge Matthew L. Garcia referred this matter to me to submit proposed findings and a recommended disposition. [Doc. 16]. I have reviewed the motion, case record, and applicable law. I RECOMMEND that the Court GRANT IN PART and DENY IN PART the motion for default judgment.

## I.      PROCEDURAL BACKGROUND

On October 9, 2024, Century Bank filed suit against Art Finance Funding, LLC, Andrew Rose, and Ann Copeland for debt and money owed, appointment of receiver, and foreclosure of liens. [Doc. 1, at 1]. Rose and Copeland are alleged citizens of Delaware, and Art Finance Funding is an alleged Delaware company with Rose and Art Finance Partners, LLC as its sole members. *Id.* at 1–2. According to the complaint, Century Bank extended a $20,000,000 line of credit to Art Finance Funding via a business loan agreement executed March 27, 2019. *Id.* at 2. Rose, Art Finance Funding's managing member, signed a personal guaranty. *Id*. The business loan agreement and guaranty included a choice-of-law provision and forum selection clause designating

1

New Mexico law and "the courts of Bernalillo County, New Mexico" respectively. [Doc. 1-1, at 5]; [Doc. 1-2, at 3].

Drawing on the credit line, Art Finance Funding executed six promissory notes from 2019 to 2021. *Id.* at 3–7.[1] The two companies secured the notes with a commercial security agreement, multiple commercial pledge agreements, and UCC financing statements filed in Delaware. *Id.* The companies subsequently agreed to delay the maturity date for the notes to June 27, 2024. *Id.* at 3. Century Bank alleges Art Finance Funding and Rose failed to pay the balance on the last five notes when they matured, with unpaid principal totaling $20,000,000, despite a demand for payment and delivery of collateral. *Id.* at 9. Century Bank demands compensatory damages for the principal, interest, and other fees related to the outstanding notes, the appointment of a receiver for secured collateral pursuant to NMSA 1978 §§ 44-8-1 et seq., and costs and attorney fees. *Id.* at 9–13. Century Bank also seeks a declaration that it may levy the marital property of Rose and Copeland pursuant to the guaranty. *Id.* at 3.

Defendants have not entered appearances. On December 2, 2024, Century Bank moved to serve Defendants by publication and mail, reciting Rose and Copeland's dodging of service despite Century Bank's best efforts.[2] [Doc. 3]. I granted the motion and permitted Century Bank to publish notice of suit in a newspaper in general circulation in New Castle County, Delaware and via mail to Defendants' Delaware residence and P.O. Box. [Doc. 4]. Century Bank submitted affidavits affirming the complaint and summonses had been mailed and notice published in the Wilmington News Journal. [Docs. 5, 6]. A clerk's entry of default pursuant to Rule 55(a) was entered in favor

---

[1] The complaint contains a typo stating a promissory note for $2,500,000 was executed in August 2020. [Doc. 1, at 4]. The note's actual value was $2,250,000. [Doc. 1-10, at 1].
[2] Rose could accept service on behalf of Art Finance Funding as its registered agent. *See* Fed. R. Civ. P. 4(h).

of Century Bank on February 13, 2025. [Docs. 7–12]. Century Bank filed the instant motion for default judgment the same day. [Doc. 13].

## II.    <u>BRIEFING SUMMARY</u>

Century Bank lists that Defendants have failed to appear or otherwise defend the suit despite proper service, the Court has both personal jurisdiction and diversity subject matter jurisdiction to enter judgment against them, and Century Bank has demonstrated a right to relief in the form of default judgment. *Id.* at 3–5. Century Bank requests judgment for $23,295,045.90 in compensatory damages and attorney fees and a declaration that it may levy Rose and Copeland's marital property. *Id.*

## III.    <u>APPLICABLE LAW</u>

When a defendant does not appear, the plaintiff may seek default judgment in a two-step process. *Nev. Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 690 (D.N.M. 2018) (citing Fed. R. Civ. P. 55). The plaintiff must first demonstrate that the defendant has failed to plead or defend against the suit, and upon that showing the clerk of the court will enter default. Fed. R. Civ. P. 55(a). Once default is entered, the plaintiff may seek judgment in its favor. Fed. R. Civ. P. 55(b). The clerk may enter judgment if the relief sought is a "sum certain" of damages, but the plaintiff must apply to the court if seeking any other relief instead of or in addition to a sum certain. *Id.*; *see Garrett v. Seymour*, 217 F. App'x 835, 838 (10th Cir. 2007).

Once the plaintiff applies for default judgment, the court must perform three analyses. First, the court must establish whether it has personal and subject-matter jurisdiction to enter a valid order against the defaulting party. *Dennis Garber & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771–72 (10th Cir. 1997) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986)). Second, the court must determine that the plaintiff's pleadings entitle it to relief

on the merits. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016) (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)). For its jurisdictional and merits analyses, the court takes the plaintiff's factual allegations in the pleadings as true. *Id.* at 764; *see United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006). Third, the court assesses relief, which may not differ in kind nor exceed in amount what the plaintiff demands in the pleadings. Fed. R. Civ. P. 54(c).

If the plaintiff seeks a quantum of damages, mere allegations are insufficient; the plaintiff must produce evidence supporting its request. *Flaks v. Koegel*, 504 F.2d 702, 707 (10th Cir. 1974). But a court may award damages without formal evidentiary proceedings if the plaintiff seeks a sum certain supported by the pleadings. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Malluk v. Berkeley Highlands Prods., LLC*, 611 F. Supp. 3d. 1134, 1138 (D. Colo. 2020). A "sum certain" means that "there is no doubt as to the amount to which a plaintiff is entitled." *Snelling v. Tribal Vapors*, No. 19-cv-00686, 2021 WL 1227836, at *45 (D.N.M. Mar. 31, 2021) (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)). "[R]ecord evidence, or supplementary documents or affidavits" must establish an exact, objective connection between the "requested default judgment damages . . . and a defendant's liability." *Id.* at *47.

## IV.    ANALYSIS

With Defendants' failure to appear and the entry of clerk's default in the record, the Court may perform the default judgment analysis.  My role here is to prepare proposed findings and my recommendations to the presiding District Judge Matthew Garcia for his consideration. I recommend Judge Garcia find that the Court has subject matter jurisdiction to hear the suit and has personal jurisdiction over Art Finance Funding and Rose, but not Copeland. On the merits, I recommend the Court find Century Bank has shown Art Finance Funding and Rose's liability for money but deny its requested declaratory relief. Finally, I recommend the Court find Century Bank

has proven $21,645,100 in sum certain damages with accrued prejudgment interest calculated from undisputed facts in the record, award those amounts as a sum certain, and set post-judgment interest on the award according to 28 U.S.C. § 1961.

## A.    The Court Has Subject Matter Jurisdiction.

I recommend the Court find it has subject matter jurisdiction. Century Bank relies upon diversity jurisdiction which requires the amount in controversy exceed $75,000 and the adverse parties have diverse state citizenship. 28 U.S.C. § 1332(a)(1). The statute requires complete diversity, meaning no plaintiff and defendant share the same state citizenship. *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). A natural person's state citizenship is their domicile, or the place in which they resided with an intent to remain indefinitely at the time of the lawsuit's filing. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Business entities' citizenship depends on their structure. Incorporated parties are deemed citizens of both the state of their incorporation and the state of their principal place of business. 28 U.S.C. § 1332(c)(1). By contrast, unincorporated associations are citizens of each state of which each member is a citizen. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016).

A limited liability company is unincorporated and therefore a citizen of each state of which any member is a citizen. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015); *Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1325 (10th Cir. 2016).[3] If a member is itself a limited liability company, the court must pierce through "however many layers" of membership it takes to reach all composing natural persons or

---

[3] Even if a limited liability company has unique features resembling incorporation under state law, only those entities constituting corporations in the traditional understanding of the word are treated separately from their composing individuals for diversity jurisdiction. *Mgmt. Nominees*, 813 F.3d at 1324.

corporations. *Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1009 (10th Cir. 2025) (internal quotation omitted).

Century Bank pleads that it is chartered and headquartered in New Mexico while Rose and Copeland are citizens of Delaware. [Doc. 1, at 1]. Therefore, Century Bank, Rose, and Copeland are diverse citizens of New Mexico and Delaware. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006); *see also Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) (jurisdiction on face of complaint sufficient with allegation of citizenship). Turning to Art Finance Funding, Century Bank alleged Rose and Art Finance Partners LLC were its only two members. [Doc. 1, at 1]. After I ordered Century Bank to supplement its motion with Art Finance Partners' membership, [Doc. 19], it provided an IRS Form 1040 Schedule C listing Art Finance Partners as a sole proprietorship owned and operated by Rose. [Doc. 20-1]. Century Bank also included the pleadings of a New York federal case in which an allegation of Art Finance Partners' Delaware citizenship was never challenged. [Doc. 20-3]. These items sufficiently demonstrate Art Finance Partners has Delaware citizenship, which in conjunction with Rose means Art Finance Funding is a Delaware citizen. *See Middleton*, 749 F.3d at 1200 (party invoking diversity jurisdiction proves citizenship by preponderance of evidence). Therefore, complete diversity is satisfied.

For the amount in controversy, Century Bank need only have made a plausible good-faith allegation its damages would total more than $75,000. *See Interstate Med. Licensure Compact Comm'n v. Bowling*, 113 F.4th 1266, 1275 (10th Cir. 2024). Century Bank alleges damages, with supporting documentation, of millions of dollars in unsatisfied notes. [Doc. 1, at 9]. The amount-in-controversy requirement for diversity jurisdiction is therefore satisfied as well.

**B.    The Court Has Personal Jurisdiction Over Art Finance Funding and Rose but Not Copeland.**

I recommend that the Court find it may exercise personal jurisdiction over Art Finance Funding and Rose but not Copeland.

1.    *Applicable law for personal jurisdiction.*

A federal court's jurisdiction over a person ordinarily must follow the law of its forum state and comport with due process. *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024); Fed. R. Civ. P. 4(k)(1)(A). New Mexico's long-arm statute confers personal jurisdiction on a court as far as constitutionally permissible. *F.D.I.C. v. Hiatt*, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881. Thus, the two prongs merge into the due process analysis. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Century Bank invokes the Court's specific personal jurisdiction over Defendants. [Doc. 13, at 4]. A federal court may exercise specific personal jurisdiction over a nonresident defendant if "minimum contacts" exist between the defendant and forum state. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). In addition, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To satisfy "minimum contacts," the defendant must have purposefully directed its activities toward the forum state, and the plaintiff's injuries must have arisen from those activities. *XMission*, 105 F.4th at 1308 (citations omitted). Due process requires more than "random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted); *accord Walden v. Fiore*, 571 U.S. 277, 285 (2014). Instead, the defendant's actions must be directed at the forum state itself to an extent where it should reasonably anticipate a demand to appear in court there. *Monge v. RG Petro-Machinery (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Regarding "fair play and substantial justice," the Supreme Court has articulated five factors: (1) the burden on the defendant to litigate in the forum state, (2) the forum state's interest in adjudicating the suit, (3) the plaintiff's power to choose the forum and interest in obtaining convenient and effective relief, (4) the judicial system's interest in efficient resolution of suits, and (5) the interest in the furtherance of substantive social policies shared by the several states. *World-Wide Volkswagen*, 444 U.S. at 292. While the plaintiff must demonstrate a defendant's minimum contacts with the forum state, "it is incumbent on the defendant to present a compelling case that . . . some other considerations would render jurisdiction unreasonable." *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017) (quoting *Dudnikov*, 514 F.3d at 1080).

Personal jurisdiction also requires valid service of process. *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (citing *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992)). Under Rules 4(e)(1) and 4(h)(1)(A), a plaintiff may serve an individual or corporate defendant in a manner comporting with the state law of the federal court's forum. In New Mexico, a defendant who cannot reasonably be served pursuant to its rules may be served by any method or methods that are "reasonably calculated under all of the circumstances to apprise the defendant of the existence and pendency of the action and afford a reasonable opportunity to appear and defend." NMRA 1-004(J). If that method is publication, the party must publish a notice of the suit's pendency once a week for three consecutive weeks in a newspaper of general circulation in the county where the action is pending and, if one county does not qualify as both, the county which "reasonably appears is most likely to give the defendant notice." NMRA 1-004(K)(1).

New Mexico permits service by publication "if and only if" the names and address of the defendants are not "reasonably ascertainable." *T.H. McElvain Oil & Gas Ltd. P'ship v. Grp. I:*

*Benson-Montin-Greer Drilling Corp.*, 2017-NMSC-004, ¶ 31, 388 P.3d 240, 249 (citations omitted). However, New Mexico excepts known defendants who intentionally avoid service of process. *Clark v. LeBlanc*, 1979-NMSC-034, ¶ 7, 593 P.2d 1075, 1076. Before receiving leave to serve by publication, a plaintiff must show they made reasonable and good-faith efforts to serve the defendant pursuant to NMRA 1-004(F). *Aaro v. Tri Star Freight Sys., Inc.*, No. 24-cv-00270, 2025 WL 1455952, at *2 (D.N.M. May 21, 2025).

> 2.    *Defendants were properly served.*

I recommend the Court find that service of process was proper. Century Bank, pursuant to my order issued December 18, 2024 [Doc. 4], mailed the summons, complaint, case assignment, and order authorizing service to Defendants' addresses in New Castle County, Delaware. [Doc. 5]; NMRA 1-004(B). In addition, Century Bank posted three notices of pendency of suit between December 23, 2024, and January 6, 2025, in the Wilmington News Journal, which circulated in New Castle. [Doc. 6].

I note that Century Bank did not publish a notice of pendency of suit in a paper in general circulation in Bernalillo County, New Mexico. That omission violates NMRA 1-004(K)(1)'s requirement that notice publish in a newspaper in the county where the action is brought in all cases. *T.H. McElvain*, 2017-NMSC-004, ¶ 32, 388 P.3d at 250; *see Ellis v. United States*, No. 20-cv-00971, 2021 WL 2351685, at *4 (D.N.M. June 9, 2021). Thus, if Century Bank rested on publication alone, entry of default judgment would be improper and additional time would be needed to allow Century Bank to complete service. However, Century Bank accompanied the Delaware publications with service via mail. New Mexico's rules of procedure permit service by "any method *or combination of methods* . . . reasonably calculated" to notice the defendant. NMRA 1-004(J) (emphasis added). Century Bank sent service to addresses where Rose and Copeland

9

resided but which they avoided after learning of the lawsuit. [Doc. 3-1, at 1]. New Castle County

is the county which reasonably appeared most likely to give Defendants formal notice given their

residences. *See* [Doc. 4]. Consequently, the lack of publication in Bernalillo County does not

trigger due process concerns. *See T.H. McElvain*, 2017-NMS-004, ¶¶ 28–30, 388 P.3d at 249

(discussing *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. 306 (1950)). Under these

circumstances, I recommend the Court find that service was sufficient.

### 3.    *The Court has personal jurisdiction over Art Finance Funding and Rose.*

Century Bank argues the Court has valid personal jurisdiction over Art Finance Funding

and Rose because the loan agreement, guaranty, and promissory notes include the following forum

selection clause: "Borrower *agrees upon Lender's request* to submit to the jurisdiction of the

*courts of Bernalillo County*, State of New Mexico" in the event of a lawsuit. *E.g.*, [Doc. 1-1, at 5]

(emphasis added).

The forum selection clause raises two issues. The first issue is the clause's use of the phrase

"courts of Bernalillo County." The Tenth Circuit ruled that a forum selection clause's reference to

the courts of a "county" exclusively applies to state courts. *Excell, Inc. v. Sterling Boiler & Mech.,

Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).[4] Similarly, the Tenth Circuit found the phrase "courts of

the State of Colorado" did not include the federal court located there because federal courts are

courts "of the *United States of America*." *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428

F.3d 921, 926 (10th Cir. 2005) (emphasis in original). The clause here follows the language

discussed in those cases by specifically designating courts *of* Bernalillo County. Therefore, the

forum selection clause does not include the Court.

---

[4]While the agreements here select New Mexico in their choice-of-law clauses, New Mexico law mirrors the
Colorado and federal law discussed in *Excell*. [Doc. 1-1, at 5]; [Doc. 1-2, at 3]; *Excell*, 106 F.3d at 320; *Mueller v.
Sample*, 2004-NMCA-075, ¶ 8, 93 P.3d 769, 772.

However, the clause's lack of limiting terms such as "exclusive," "only," or "must," its inclusion of a predicate condition (Century Bank's request), and the absence of an express agreement to venue show the forum selection clause is permissive. *K & V Sci. Co. v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002). A permissive clause does not require a suit be brought in the specified venue. *Id.* at 498. I recommend that the Court determine the forum selection clause in this case is permissive, not mandatory.

But the resolution of the first issue leads to the second. Century Bank does not cite, nor did I discover, binding authority addressing whether a permissive forum selection clause specifying select state courts would enable a federal court sitting in the same state to exercise personal jurisdiction. The Tenth Circuit opinions addressing similar clauses focus on venue disputes. *See Gas Sensing Tech. Corp. v. Ashton*, 785 F. App'x 1010, 1016 (10th Cir. 2020); *K & V Sci. Co.*, 314 F.3d at 499; *Am. Soda,* 428 F.3d at 927. I found one unpublished opinion from New York that determined the court could not base personal jurisdiction on a permissive clause. *Flextronics Da Amazônia Ltda. v. CRW Plastics USA, Inc.*, No. 21-cv-03863, 2022 WL 4780804, at *4 (S.D.N.Y. Oct. 3, 2022), *rev'd on other grounds*, 2023 WL 8270818 (2d Cir. Nov. 30, 2023).

But the Court need not try to chart that territory. The nature of the contracts and business between Century Bank, Art Finance Funding, and Rose are sufficient to establish minimum contacts on their own. The mere existence of the agreements between the parties could not establish the Court's personal jurisdiction. *Burger King*, 471 U.S. at 478. However, Art Finance Funding, through Rose, intentionally reached out to Century Bank in New Mexico to secure a loan. *See id.* at 479. Those loans and subsequent agreements created a multi-year business relationship in New Mexico, and Art Finance Funding would have had to know that the injury from any missed payments would be felt there. *See id.* at 480; [Doc. 1-1, at 5] (contractual terms acknowledged

11

Century Bank was accepting the loan agreement in New Mexico). Thus, Art Finance Funding and Rose's connection to New Mexico is not incidental. Rather, Art Finance Funding and Rose directed its business activities towards the state and the alleged injuries emerged here as a result. *See Dudnikov*, 514 F.3d at 1071.

Proceeding to the five-factor test, I recommend the Court also find exercising personal jurisdiction would not offend traditional notions of fair play. On one hand, requiring citizens of Delaware to attend court in New Mexico would involve significant travel and expense, and Delaware has an interest in the secured collateral which Century Bank registered with its state department. [Doc. 1, at 3–7]. On the other hand, one side here must litigate "on the road," and no evidence suggests litigating in New Mexico would substantially burden Defendants' ability to defend the suit. *Dudnikov*, 514 F.3d at 1081. Furthermore, New Mexico's interest in the suit is at least equal to Delaware's. The loan agreements are governed by New Mexico law and the state has an important interest in enabling its residents to "seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998). As the plaintiff, Century Bank has the privilege to select the forum, and relevant witnesses and evidence would be found in both states. *Charles Mach. Works, Inc. v. Valley Ditch Witch, Inc.*, No. 13-cv-00651, 2014 WL 1745059, at *2 (W.D. Okla. May 1, 2014). Therefore, the fairness factors do not weigh against the Court exercising personal jurisdiction over Art Finance Funding and Rose.

### 4.    *The Court does not have personal jurisdiction over Copeland.*

Century Bank asserts the Court may exercise personal jurisdiction over Copeland by virtue of her interest in marital property Rose subjected to the guaranty. [Doc. 1, at 3]. Critically, Century Bank does not allege whether any marital property sits in New Mexico. Given the couple's

domicile in Delaware, the Court must determine whether it can exercise personal jurisdiction over an out-of-state resident on the basis of their interest in (presumably) out-of-state marital property.

Century Bank did not offer any law or argument on this point, and I found no controlling authority. However, persuasive authority suggests a federal court may exercise personal jurisdiction when the spouse "agreed" to involve that interest in the other spouse's contacts in the forum state, either by their conduct or function of law. In one Sixth Circuit case, defendants were a group of out-of-state shareholders to a Kentucky soda vendor and the shareholders' spouses. *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982). As part of their business dealings, the shareholders and their spouses personally guaranteed the soda vendor's credit. *Id.* The Sixth Circuit found that the spouses were subject to personal jurisdiction in Kentucky because their guaranties and marital interest in the vendor's shares showed they had knowingly "risked their names and financial worth to aid in the establishment of a Kentucky venture in which they had a property interest." *Id.* at 1137.

In another case, the District of Arizona found it could exercise personal jurisdiction over a non-resident spouse because the married couple resided in a community property state. *Rincon Etal Invs. Inc. v. Coughran*, No. 21-cv-00426, 2022 WL 4115683, at *2–3 (D. Ariz. Sept. 9, 2022). Since community property regimes apply to both spouses the burdens on marital property incurred by either, both spouses could be subject to orders in a suit implicating that property. *Id.* at *3. By contrast, the court found that it could not exercise personal jurisdiction over a spouse residing in a non-community property state. *Peter Strojnik, P.C. v. Signalife, Inc.*, No. 08-cv-01116, 2009 WL 605411, at *3 (D. Ariz. Mar. 9, 2009); *accord Nivisys, LLC v. Walsh*, No. 18-cv-00369, 2019 WL 5417153, at *7 (W.D. Tex. July 9, 2019).

Copeland and Rose are Delaware citizens. Assuming all marital property is located in Delaware too, the state endorses a non-community property regime. 13 *Del. C.* § 1513; *see Stanley v. Stanley*, 956 A.2d 1, 4 (Del. 2008). Century Bank does not allege Copeland had any personal involvement in the negotiation, execution, or satisfaction of the promissory notes. Copeland's name or signature does not appear on any of the documents provided to the Court. Thus, there is no indication that Copeland had contacts at all with New Mexico, let alone minimal contacts that would satisfy due process. For these reasons, I recommend the Court find that it cannot exercise personal jurisdiction over Copeland.

**C.    Century Bank's Pleadings Support Judgment in Its Favor Against Art Finance Funding and Rose, but the Court Should Deny Declaratory Relief.**

Century Bank seeks default judgment on its claims for "debt and money owed" against Art Finance Funding and Rose and a declaration that Century Bank may seek recourse against Rose and Copeland's marital property. For the reasons below, I recommend that the Court determine Century Bank has supported its claims for money owed but deny declaratory relief regarding Rose and Copeland's marital property.

*1.    Century Bank's claims for "debt and money owed."*

Century Bank pleads that Art Finance Funding and Rose violated its promissory notes and his guaranty by failure to make timely payments. [Doc. 1 at 12]. Stating a claim for relief based on a promissory note requires the plaintiff to prove (1) it is the holder of the note, (2) the defendant signed the note, (3) the note became due and payable, and (4) the defendant has not paid the amount due and owing. *Wilmington Sav. Fund Soc'y, FSB v. Clay*, No. 20-cv-00217, 2020 WL 6544242, at *3 (D.N.M. Nov. 6, 2020) (citation omitted). Enforcing guaranties requires showing the guaranty was validly signed by the defendant and the defendant's liability was triggered by its terms. *See Brown v. Financial Sav.*, 1992-NMSC-025, ¶ 5, 828 P.2d 412, 413 (discussing

interpretation of guaranties); *see also F.D.I.C. v. Moore*, 1994-NMSC-072, ¶ 9, 879 P.2d 78, 80 (discussing effect of signature on personal liability).

I recommend the Court make the following findings pursuant to Century Bank's pleadings and attached exhibits. *Tripodi*, 810 F.3d at 764. On March 27, 2019, Century Bank and Art Finance Funding executed a business loan agreement, signed by Rose as Art Finance Funding's agent, establishing a $20,000,000 line of credit. [Doc. 1, at 2]. On the same day, Rose signed an unconditional personal guaranty for any debt Art Finance Funding incurred pursuant to the loan agreement. [Doc. 1-2, at 1]. That guaranty is continuing and permits Century Bank to pursue any debts under the loan agreement against Rose without exhausting alternative remedies against other parties. *Id.* Between 2020 and 2021, Art Finance Funding issued the following promissory notes to Century Bank, which were signed by Rose: (1) a May 21, 2020, note totaling $5,000,000; (2) an August 31, 2020, note totaling $2,250,000; (3) a November 12, 2020, note totaling $6,000,000; (4) an August 3, 2021, note totaling $3,150,000, and (5) an August 6, 2021, note totaling $3,600,000. *Id.* at 3–7; [Doc. 1-10, at 1]. Art Finance Funding and Century Bank also executed a commercial security agreement designating all Art Finance Funding's "Chattel Paper, Accounts and General Intangibles, including but not limited to an Assignment of a Note Receivable" as collateral for the loans. [Doc. 1, at 3]. Century Bank perfected its security interest with a UCC financing statement filed with the Delaware Department of State on April 4, 2019. *Id.*

Art Finance Funding and Century Bank executed additional agreements assigning several notes to Century Bank which included (1) a May 8, 2020, promissory note between Rose Petal Commodities, Inc. and Art Finance Funding worth $6,000,000; (2) a July 27, 2020, promissory note between Adelson Galleries, Inc. and Art Finance Funding worth $2,500,000, later refinanced as a new November 14, 2023, promissory note worth $5,000,000; (3) an October 26, 2020,

promissory note between Viana Art LLC and Art Finance Funding worth $7,500,000; (4) a March 28, 2021, promissory note between Carlton C. Rochell, Jr. and Art Finance Funding, later refinanced as a new November 1, 2023, note of the same value; (5) and a July 29, 2021, promissory note between Petrarch LLC d/b/s Electrum joined by Tanis Antiquities, Ltd., and Art Finance Funding worth $4,000,000. *Id.* at 3–7. Century Bank perfected these security interests with UCC financing statements filed with the Delaware Department of State. *Id.*

On July 22, 2022, Century Bank and Art Finance Funding executed a new agreement extending the maturity date for the promissory notes to June 27, 2024. *Id.* at 3. Art Finance Funding and Rose failed to satisfy the May 2020, August 2020, November 2020, and first and second August 2021 notes upon that date, and on September 24, 2024, Century Bank sent a demand for payment and notice of default to Art Finance Funding and Rose. *Id.* at 9–11. Based on these findings, I recommend that the Court find Century Bank has supported entry of judgment against Art Finance Funding and Rose, jointly and severally, in its favor for debt and money owed.

> 2.   *Century Bank's claim for declaratory judgment.*

Century Bank requests a declaration that it may levy the marital property held by Rose and Copeland to satisfy a judgment in its favor. [Doc. 13, at 5]. "[I]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Declaratory judgment is a remedy and does not create new substantive rights or a basis for jurisdiction. *United Fin. Cas. Co. v. Rocha*, 726 F. Supp. 3d 1295, 1301 (D.N.M. 2023). An "actual controversy" is a concrete dispute bearing on the parties' adverse legal interests and relations which may be settled by the declaration. *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1330 (10th Cir. 2022).

28 U.S.C. § 2201(a) gives the court discretion to decide whether to exercise its power to grant declaratory relief. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). In *State Farm Fire and Casualty Co. v. Mhoon*, the Tenth Circuit adopted six factors to determine whether granting declaratory relief is appropriate: (1) does a declaration settle the controversy between the parties; (2) does the declaration serve a useful purpose in clarifying the legal relations at issue; (3) is the declaratory action being used for "procedural fencing"; (4) would the declaratory action increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) is there a preferable alternative remedy. 31 F.3d 979, 983 (10th Cir. 1994)). While a federal court's discretion is most often invoked when a parallel or related proceeding in state court either exists or is imminent, that factor is not controlling. *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002). However, several circuits find the existence of a parallel proceeding to be the most important factor, and "district courts declining jurisdiction should be rigorous in [assuring] that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014) (collecting cases); *see also City of Las Cruces*, 289 F.3d at 1183.

I recommend that the Court deny the declaratory relief sought by Century Bank on the merits and as a matter of discretion. First, without personal jurisdiction over Copeland the Court cannot issue a binding order against her. And without indication that marital property exists in New Mexico, the Court cannot affect her marital property rights. *Cf. Johnston v. Arbitrium (Cayman Islands) Handels AG*, 198 F.3d 342, 349 (2d Cir. 1999) (where property was in forum state, court could still resolve an interested party's right in that property despite lacking personal jurisdiction). Second, the guaranty provision cited by Century Bank only applies to Rose. The provision reads "[a]ny married person who signs this Guaranty hereby expressly agrees that

recourse under this Guaranty may be had against both his or her separate property and community property." [Doc. 1-2, at 1]. Under New Mexico law, the terms of a written guaranty are interpreted according to their plain meaning. *WXI/Z Southwest Malls v. Mueller*, 2005-NMCA-046, ¶¶ 10–11, 110 P.3d 1080, 1083. The specification that the guaranty subjects the property rights of any person "who signs this guaranty" refers by its plain language to the signor's interests only. In other words, Rose's guaranty can only burden Copeland's rights in their marital property if he had the legal ability to do so. Thus, the Court cannot declare Century Bank has a right to levy against Copeland's marital property rights without knowing the applicable law.

Furthermore, as a matter of discretion the Court should decline to grant any declaratory relief with respect to this clause. There is no indication of parallel state proceedings or an attempt by Century Bank to engage in procedural fencing, which weighs heavily in its favor. *Reifer*, 751 F.3d at 144. But a declaration will not settle the controversy over marital property, will clarify little about the parties' legal relations, and will risk friction with the states. *See Mhoon*, 31 F.3d at 983. The Court cannot declare more than Century Bank's right to levy Rose and Copeland's marital property to the extent allowed by applicable law. That relief does little to clarify Century Bank's rights nor accomplish much more than the preclusive effect of the Court's findings with respect to Century Bank's enforceable notes and guaranty. In addition, matters of domestic relations, including rights to marital property, are traditionally reserved for the states. *See, e.g.*, *United States v. Bigford*, 365 F.3d 859, 869–70 (10th Cir. 2004). In sum, despite the lack of parallel state proceedings the *Mhoon* factors still support declining declaratory relief on this issue.

**D.   Century Bank Has Proven Most but Not All Its Requested Damages.**

I recommend that Century Bank has proven most but not all of its requested damages. Century Bank seeks a judgment of $23,295,045.90 plus interest. With its complaint, Century Bank attached the promissory notes, security and pledge agreements, UCC filing statements, guaranty,

business loan agreement, and change of term agreements between itself, Art Finance Funding, and

Rose, as well as the demand letter Century Bank sent on September 24, 2024. Century Bank also

submitted the sworn declaration of Lucia Fauver, Century Bank's senior vice president and credit

officer. [Doc. 14]. The sworn declaration claims damages as of February 11, 2025, composed of

the unpaid principals on the five promissory notes, accrued interest, late fees, "release of UCC"

fees, payoff quote fees, "other charges," and $11,184.17 in legal fees. *Id.* Century Bank also seeks

an award of interest at the notes-set rate from February 11, 2025, until the date Art Finance Funding

and Rose satisfy the judgment in full. *See* [Doc. 14]. I address Century Bank's damages for the

unpaid principal and fees, prejudgment interest, attorney fees and costs, and post-judgment interest

separately below.

       *1.    Principal and fees.*

      I recommend the Court find Century Bank has proven $20,000,100 in unpaid principal and

fees. Century Bank provided the May 2020, August 2020, November 2020, and first and second

August 2021 notes showing total initial principal of $20,000,000. [Docs. 1-7, 1-10, 1-13, 1-15, 1-

18]. Both Fauver's declaration and the demand letter prove that neither Art Finance Funding nor

Rose have paid down the principal. *See Eighth Dis. Elec. Pension Fund v. Pueblo West Elec., Inc.*,

No. 23-cv-02831, 2024 WL 1931788, at *6 (D. Colo. Apr. 15, 2024) (court may accept as true

facts set forth via affidavit). Century Bank has also proven the $100 of requested UCC fees. Fauver

swore to their amount and the commercial pledge agreements require Art Finance Funding to

compensate for fees relating to UCC filings. *E.g.*, [Doc. 1-11, at 1].

      However, Century Bank has not proven the late fees, payoff quote fees, and "other charges"

requested. While the promissory notes inflict a late fee of five percent "of the regularly scheduled

payment," a variable interest rate determines the scheduled payments. *E.g.*, [Doc. 1-7, at 1].

Fauver's declaration does not explain how the late fees were tabulated or what interest rates were used. *Hill Enters., Inc. v. Lookingbill*, No. 12-cv-00253, 2012 WL 12931718, at *3 (D.N.M. Aug. 6, 2012) (affidavit insufficient when it lacked a calculation of claimed interest and fees). Similarly, Fauver's declaration does not explain how the "other charges" and payoff quote fees were calculated nor what provisions of the notes entitle Century Bank to recover them. *See Snelling*, 2021 WL 1227836, at *47 (exact, objective connection required between damages claimed and basis for recovery). Furthermore, the Court may not award damages on default which exceed the amount requested in the complaint. Fed. R. Civ. P. 54(c). Here, Fauver's declaration claims $5,904.05 more in "other charges" than the complaint does for the May 2020 note. *Compare* [Doc. 14, at 2], *with* [Doc. 1, at 9].

  2. <u>*Prejudgment interest.*</u>

  New Mexico permits recovery of prejudgment interest pursuant to a contractual provision if that interest can be calculated with reasonable certainty. NMSA 1978 § 56-8-3; *State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. Co. of Am.*, 1994-NMSC-106, ¶ 5, 883 P.2d 144, 147. Century Bank requests accrued interest up through February 11, 2025, totaling $2,726,951.55. *See* [Doc. 14]. As discussed above, the promissory notes set a variable interest rate for their scheduled payments. Consequently, the Court cannot confirm the interest requested without proof of the rates used in Century Bank's calculations. However, the demand letter provided by Century Bank shows it triggered the default rate on September 23, 2024. [Doc. 1-22, at 1]. The default rate set by the promissory notes is a fixed twenty-one percent of the unpaid principal per annum (360 days). [Doc. 1-7, at 1]. With principal totaling $20,000,000, the Court can calculate that in the 141 days between September 23, 2024, and February 11, 2025, a total interest of $1,645,000 accrued.[5]

---

[5] Interest = 0.21/360*20,000,000*141.

Therefore, I recommend that the Court find Century Bank has proven $1,645,000 in prejudgment interest as of February 11, 2025. For prejudgment interest after February 11, 2025, until the entry of judgment, I recommend that Century Bank is entitled to a rate of $11,666.67 per day.[6]

3.    _Post-judgment interest._

Century Bank seeks post-judgment interest at the default rate until the date Art Finance Funding and Rose satisfy the judgment. [Doc. 14]. However, 28 U.S.C. § 1961(a) requires a calculation of post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding" the entry of judgment. That provision controls money judgments in civil cases even if the federal court exercises diversity jurisdiction. _Everaard v. Hartford Accident & Indem. Co._, 842 F.2d 1186, 1194 (10th Cir. 1988). While parties can contract for a different post-judgment interest rate, they must do so expressly and unambiguously. _In re Riebesell_, 586 F.3d 782, 794 (10th Cir. 2009). Here, the default provision in the notes states that "upon default, including failure to pay upon final maturity, the interest rate . . . shall be increased to 21.000% per annum based on a year of 360 days." _E.g._, [Doc. 1-7, at 1]. The provision makes no express waiver of § 1961 nor specifies post-judgment interest. The Tenth Circuit held a similar provision failed to supplant the statutory rate. _Riebesell_, 586 F.3d at 794. I recommend the post-judgment interest rate must be calculated pursuant to § 1961 on the date judgment is entered and then applied to the entire award. _See Wheeler v. John Deere Co._, 986 F.2d 413, 415 (10th Cir. 1993).

4.    _Attorney fees and costs._

---

[6] As the promissory notes set the default interest rate at twenty-one percent per annum per the 365/360 method, the daily rate is equivalent to $20,000,000 multiplied by 0.21 and divided by 360. _E.g._, [Doc. 1-7, at 1].

Under New Mexico law, a court may award reasonable attorney fees and costs to a prevailing party when authorized by a contractual provision. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 19, 149 P.3d 976, 987 (citation omitted). Here, all promissory notes include a such a provision. *E.g.*, [Doc. 1-7, at 2]. New Mexico follows the lodestar method. *Autovest, L.L.C. v. Agosto*, 2021-NMCA-053, ¶ 25, 497 P.3d 642, 650–51. Accordingly, the Court calculates reasonable attorney fees by multiplying total hours reasonably spent by counsel with a reasonable hourly rate then considering additional factors bearing on a fair award. *Id.*

Attorney fees are not sum-certain damages. *Bank of West v. Mayan Constr., Inc.*, No. 17-cv-01154, 2019 WL 95568, at *2 (D.N.M. Jan. 3, 2019) (citing *Venable*, 721 F.2d at 297). Generally, a hearing is required to receive evidence and make findings of a reasonable fee award. *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). However, a hearing is not indispensable if the plaintiff provides supporting affidavits and documentation to create a sufficient record on which to base an award. *See Malluk*, 611 F. Supp. 3d at 1138. But Century Bank provides no affidavits or documentation reflecting hours, billing rates, or any other factor bearing on reasonableness. Therefore, I recommend that the Court find Century Bank failed to provide sufficient material to justify an award of attorney fees.

## V.    CONCLUSION

In summary, for the reasons above I recommend the Court GRANT IN PART and DENY IN PART Century Bank's motion for default judgment and:

- Determine that the Court may exercise subject matter jurisdiction over the case and personal jurisdiction over Art Finance Funding and Rose but not Copeland;

- Find that Century Bank has pleaded sufficient facts to support its claims for debt and money owed; and

- Find that Art Finance Funding and Rose are jointly and severally liable for money owed on the May 2020, August 2020, November 2020, and first and second August 2021 notes held by Century Bank; and

- Deny Century Bank's requested declaratory relief; and

- Award compensatory damages totaling **$21,645,100**; and

- Award prejudgment interest at a rate of **$11,666.67 per day** from February 11, 2025, to the date judgment is entered; and

- Award post-judgment interest at a rate to be calculated pursuant to 28 U.S.C. § 1961(a).


Hon. Jerry H. Ritter
United States Magistrate Judge

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of the Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of these proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**